## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GURU P. PALAKURU**, <br><br> Plaintiff, <br><br> v. <br><br> **TRACY RENAUD**, *Senior Official Performing the Duties of the Director, U.S. Citizenship and Immigration Services*,[1] <br><br> Defendant. | Case No. 1:20-cv-02065 (TNM) |

## <u>MEMORANDUM OPINION</u>

Plaintiff Guru P. Palakuru sues Tracy Renaud, who currently performs the duties of Director of the U.S. Citizenship and Immigration Services ("USCIS" or "the Government"). Palakuru claims that the Government's delay in adjudicating his visa petition is unreasonable. Among other relief, he seeks an order compelling the Government to adjudicate his petition within 30 days. The Government moves to dismiss. Because Palakuru has failed to allege a plausible claim of unreasonable delay under the Administrative Procedure Act ("APA"), the Court will grant the motion.

### I.

### A.

This case concerns the EB-5 Immigrant Investor Program, which allows foreign investors to enter the United States "for the purpose of engaging in a new commercial enterprise" that

---

[1] Under Rule 25(d) of the Federal Rules of Civil Procedure, Tracy Renaud is substituted for Kenneth T. Cuccinelli, former Senior Official Performing the Duties of the Director of the U.S. Citizenship and Immigration Services, as the Defendant in this suit.

meets certain criteria.  8 U.S.C. § 1153(b)(5)(A).  To qualify, the investment must "create full-time employment for not fewer than 10 United States citizens or aliens lawfully admitted for permanent residence or other immigrants lawfully authorized to be employed in the United States (other than the immigrant and the immigrant's spouse, sons, or daughters)."  *Id.* § 1153(b)(5)(A)(ii).  The investment must also be at or above a certain dollar amount.  *See id.* § 1153(b)(5)(C); 8 C.F.R. § 204.6(f).

Aside from creating jobs directly by hiring employees, foreign investors can invest in a "regional center" designated by USCIS that is designed to create jobs indirectly through economic growth.  *See* 8 C.F.R. § 204.6(m); *see also id.* § 204.6(e) (defining a "[r]egional center" as "any economic unit, public or private, which is involved with the promotion of economic growth, including increased export sales, improved regional productivity, job creation, and increased domestic capital investment").

Foreign investors may petition to be classified as an EB-5 immigrant by using a Form I-526.  *See id.* § 204.6(a), (c).  The approval of the Form I-526 is the first step towards becoming a lawful permanent resident.  Def.'s Mem. Supp. Mot. to Dismiss ("Def.'s Mem.") at 8, ECF No. 9-1.[2]  An approved Form I-526 allows the foreign investor and his dependent family members to obtain "legal U.S. resident" status "on a conditional basis for two years."  *Wang v. USCIS*, 375 F. Supp. 3d 22, 26 (D.D.C. 2019).

USCIS generally processes petitions according to a "first-in, first-out" method, but prioritizes petitions from countries "where visas are immediately available, or soon available" based on per-country limits.[3]  This process allows visa petitioners from countries where visas are

---

[2]  All page citations are to the page numbers that the CM/ECF system generates.

[3]  *USCIS Adjusts Process for Managing EB-5 Visa Petition Inventory*, U.S. Citizenship and Immigr. Servs. (Jan. 29, 2020), https://www.uscis.gov/news/news-releases/uscis-adjusts-process-

immediately available to more efficiently use their country's annual allotment of visas.  *See USCIS Adjusts Process for Managing EB-5 Visa Petition Inventory*, *supra* note 3.

Palakuru is a citizen and national of India who resides in the United States.  Compl. ¶ 1, ECF No. 1.  He alleges that he invested the required amount "into a new commercial enterprise in the United States"—specifically, a regional center in New York—"that created at least ten jobs for lawful United States workers."  *Id.* ¶¶ 9, 60.  Palakuru filed his Form I-526 petition in October 2018, so his petition has been pending for over two years.  *See id.* ¶ 61.

He sues claiming that the Government's delay in addressing his petition constitutes unreasonable delay under the APA.  *Id.* ¶¶ 87–108.  Palakuru "demands discovery" and asks the Court to compel the Government to adjudicate his petition "within 30 days."  *Id.* ¶¶ 107, 114. He also seeks fees under the Equal Access to Justice Act.  *Id.* ¶¶ 109–12.  The Government moves to dismiss.  Def.'s Mot. to Dismiss, ECF No. 9; Def.'s Mem.  The motion is ripe.[4]

## II.

To defeat a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The Court must "treat the complaint's factual allegations as true and must grant the plaintiff the benefit of all inferences that can be

---

for-managing-eb-5-visa-petition-inventory; *see also Questions and Answers: EB-5 Immigrant Investor Program Visa Availability Approach*, U.S. Citizenship and Immigr. Servs. (Sept. 17, 2020), https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/questions-and-answers-eb-5-immigrant-investor-program-visa-availability-approach.  The agency also factors in whether "[t]he underlying project has been reviewed."  *Questions and Answers: EB-5 Immigrant Investor Program Visa Availability Approach*, *supra*.

[4]  The Court has jurisdiction over this matter under 28 U.S.C. § 1331.

derived from the facts alleged." *L. Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017) (cleaned up). But the Court need not credit legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "In determining whether a complaint fails to state a claim," the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice." *Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir. 2006) (cleaned up).

## III.

The Government argues that Palakuru's complaint must be dismissed because it fails to state a claim of unreasonable delay. *See* Def.'s Mem. at 13. The Court agrees.

The APA "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time,' and authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed.'" *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003) (quoting 5 U.S.C. §§ 555(b), 706(1)). Courts in this circuit consider six factors (the "*TRAC* factors") when evaluating unreasonable-delay claims:

1. the time agencies take to make decisions must be governed by a rule of reason;
2. where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
3. delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
4. the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
5. the court should also consider the nature and extent of the interests prejudiced by delay; and
6. the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

4

*Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*") (cleaned up).  The D.C. Circuit has emphasized that "[r]esolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court."  *Mashpee*, 336 F.3d at 1100.

### A.

For starters, the Court rejects Palakuru's argument that the Government's "motion is premature."  Pl.'s Resp. to Def.'s Mot. to Dismiss ("Pl.'s Resp.") at 10, ECF No. 10.  True, some courts have held that it is inappropriate to decide unreasonable-delay claims at the motion-to-dismiss stage before discovery.  *See, e.g.*, *Thomas v. Pompeo*, 438 F. Supp. 3d 35, 44 (D.D.C. 2020) ("conclud[ing] that any determination of whether defendants have unreasonably delayed adjudication . . . is premature at this juncture" because the inquiry is "fact intensive" (cleaned up)).  But the weight of authority appears to cut in the opposite direction.  *See, e.g.*, *Sarlak v. Pompeo*, No. 20-cv-35-BAH, 2020 WL 3082018, at *5 (D.D.C. June 10, 2020) (acknowledging the plaintiffs' argument that applying the *TRAC* factors at the motion-to-dismiss stage was premature, but deciding that "[n]evertheless, in cases like this one involving claims of unreasonably delayed waiver determinations, the *TRAC* factors have been generally employed at the motion to dismiss stage to determine whether a plaintiff's complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay" (cleaned up)); *see also Ghadami v. DHS*, No. 19-cv-00397-ABJ, 2020 WL 1308376, at *7 n.6 (D.D.C. Mar. 19, 2020) (acknowledging the split in authority but deciding that "it is appropriate for the Court to apply the factors at th[e] [motion-to-dismiss] stage"); *Didban v. Pompeo*, 435 F. Supp. 3d 168, 176–77 (D.D.C. 2020) (applying the *TRAC* factors at the motion-to-dismiss stage); *Bagherian v.*

*Pompeo*, 442 F. Supp. 3d 87, 95–96 (D.D.C. 2020) (same); *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017) (same).

It is appropriate now to consider whether Palakuru's complaint meets Rule 12(b)(6)'s pleading standards.  As another judge in this district put it after acknowledging the split in authority, "the Court is not determining whether there has been an unreasonable delay; rather, it is determining whether plaintiffs' complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay."  *Ghadami*, 2020 WL 1308376, at *7 n.6.  The Government's motion is thus timely.[5]

**B.**

Applying the *TRAC* factors, the Court determines: (1) that the Government's adjudication of petitions is governed by a rule of reason and that any indication from Congress does not suggest otherwise; (2) that the effect of expediting Palakuru's petition would undermine the Government's competing priorities; and (3) that the rest of the *TRAC* factors do not warrant granting Palakuru the relief he seeks.[6]

---

[5]  The Court has considered Palakuru's notices of supplemental authority.  *See* Notice of Suppl. Authority, ECF No. 12; Second Notice of Suppl. Authority, ECF No. 13.  While these cases declined to decide unreasonable-delay claims at the motion-to-dismiss stage, *see Addala v. Renaud*, No. 20-cv-2460-RCL, 2021 WL 244951, at *3 (D.D.C. Jan. 25, 2021); *Gutta v. Renaud*, No. 20-cv-06579-DMR, 2021 WL 533757, at *8 (N.D. Cal. Feb. 12, 2021), the Court still finds that the weight of authority suggests that it is appropriate to do so here.  One of Palakuru's cases in fact acknowledges that there are "a number of cases where courts have resolved unreasonable delay cases on motions to dismiss," which shows that "other courts have exercised their discretion differently."  *Addala*, 2021 WL 244951, at *3.

[6]  The Court will grant the Government's motion to waive compliance with Local Civil Rule 7(n)'s requirement that the agency submit an index of the administrative record.  *See* Def.'s Mem. at 12 n.6; *see also Nat'l Law Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affairs*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012) (explaining that "there is no administrative record for a federal court to review" in cases of alleged agency inaction (cleaned up)); *Addala*,

**1.**

The first *TRAC* factor is the "most important."  *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008).  It requires an inquiry into whether there is "any rhyme or reason" for the Government's delay—in other words, "whether the agency's response time . . . is governed by an identifiable rationale."  *Ctr. for Sci. in the Pub. Interest v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).  The Court finds that the Government's process for adjudicating I-526 petitions is governed by a rule of reason.

The Government "prioritizes I-526 petitions for individuals from countries where visas are currently available or soon to be available," "factors in whether the underlying project has been reviewed," and "otherwise manages workflows in first-in, first-out order."  Def.'s Reply Supp. Mot. to Dismiss ("Def.'s Reply") at 14, ECF No. 11.  Such a process is reasonable.  Courts have recognized that a "first-in, first-out method" satisfies the rule-of-reason inquiry.  *See, e.g.*, *Muvvala v. Wolf*, No. 20-cv-02423-CJN, 2020 WL 5748104, at *3 (D.D.C. Sept. 25, 2020) ("Other federal courts have held that this first-in, first-out method of adjudication constitutes a 'rule of reason' and satisfies the first *TRAC* factor.").  And the Government's prioritization of certain petitions based on visa availability is justified by its stated rationale—to "allow[] qualified EB-5 petitioners from traditionally underrepresented countries to have their petitions approved in a more timely fashion."  Def.'s Mem. at 16.  The Court thus rejects Palakuru's contention that the Government has not sufficiently "outlined the contours of [its] alleged Rule of Reason."  Pl.'s Resp. at 14.

---

2021 WL 244951, at *3 ("grant[ing] the agency relief from the requirements of Local Civil Rule 7(n)" because "there is no administrative record to produce" in a case of agency inaction).

Palakuru also argues that the Government has not applied its rule of reason to his petition. He contends:  (1) that the Government has not adjudicated his petition even though there are visas available for Indian nationals; and (2) that he is entitled to priority status because he invested in a regional center.  *See* Pl.'s Resp. at 14–15.  But Palakuru's arguments do not account for the possibility that many others in his situation—those with available visas who invested in a regional center—filed their petitions before he did.  As the Government explains, "USCIS generally manages its workflows in first-in, first-out order," and the agency "is still working through its inventory of earlier-filed petitions from thousands of other petitioners whose visas are currently available."  Def.'s Reply at 16.

The second *TRAC* factor directs courts to consider whether a statutory timetable supplies content for the rule-of-reason inquiry.  *TRAC*, 750 F.2d at 80.  Palakuru argues that 8 U.S.C. § 1571(b)—which states that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application"—sets "a timeframe" by which the Government must adjudicate petitions like his. Pl.'s Resp. at 16.

The Court is inclined to agree with the Government that the prefatory "sense of Congress" language in § 1571(b) is best interpreted as nonbinding.  *See* Def.'s Mem. at 17. Several courts, including the D.C. Circuit, have recognized that "a sense of Congress resolution is not law."  *Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of the Treasury*, 545 F.3d 4, 14 n.6 (D.C. Cir. 2008); *see also Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 529 n.26 (D.C. Cir. 2015) (noting the First, Third, and Ninth Circuits, have treated similar language as "precatory" and "a statement of opinion," rather than "a statement of fact"); *Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of Treasury*, 498 F. Supp. 2d 150, 165 (D.D.C. 2007) ("Courts have

repeatedly held that such 'sense of Congress' language is merely precatory and non-binding."), *aff'd*, 545 F.3d 4.  It makes practical sense that § 1571(b)'s language be interpreted as precatory rather than binding, as "Congress has given the agencies wide discretion in the area of immigration processing."  *Skalka*, 246 F. Supp. 3d at 153–54.

Even if the Court was to conclude that § 1571(b) provides some "indication of the speed with which [Congress] expects the agency to proceed," *TRAC*, 750 F.2d at 80, though, the Court's rule-of-reason analysis would remain unchanged.  And the *TRAC* factors on the whole—particularly the first factor and the fourth factor (discussed below)—would still decisively favor the Government.  *Accord Uranga v. USCIS*, No. 20-cv-0521-ABJ, 2020 WL 5763633, at *12–13 (D.D.C. Sept. 28, 2020) (finding that 8 U.S.C. § 1571(b) provides "an indication of what the legislature had in mind," but still concluding that the "plaintiff ha[d] failed to state a claim for unreasonable delay" because two *TRAC* factors favored the Government).

Courts have regularly found that a waiting time like Palakuru's is not unreasonable.  *See, e.g.*, *Bagherian*, 442 F. Supp. 3d at 95 ("[T]he twenty-five-month delay at issue here is not unreasonable as a matter of law, given the circumstances."); *Ghadami*, 2020 WL 1308376, at *8 ("[M]any courts evaluating similar delays [*i.e.*, 25 months] have declined to find a two-year period to be unreasonable as a matter of law."); *see also Yavari v. Pompeo*, No. 2:19-cv-02524-SVW-JC, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) ("District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable.").[7]

---

[7]  The Court acknowledges Palakuru's argument that "delays in the processing of different types of immigration applications" are not persuasive because "not all delays can be considered the same."  Pl.'s Resp. at 17.  The Court in no way relies on these cases to justify the outcome here.  They merely show that others waiting for immigration benefits face similar delays and thus reinforce the determination that Palakuru has not stated a claim of unreasonable delay.

**2.**

The Court finds that the fourth *TRAC* factor—"the effect of expediting delayed action on agency activities of a higher or competing priority," *TRAC*, 750 F.2d at 80—weighs heavily in favor of the Government.

The D.C. Circuit has repeatedly emphasized "the importance of competing priorities in assessing the reasonableness of an administrative delay." *Mashpee*, 336 F.3d at 1100 (cleaned up). This factor is so critical that the Circuit has "refused to grant relief, even though all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Id.* (cleaned up) (referring to *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)). This is so because courts "have no basis for reordering agency priorities." *In re Barr*, 930 F.2d at 76. Rather, agencies are "in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *Id.*

Just so here. Were the Court to compel the Government to act on Palakuru's petition, it would simply move him to "the head of the queue" because he sued. "[I]t is notable that [Palakuru] does not point to any unique considerations that warrant an expedited review of his" petition. *Uranga*, 2020 WL 5763633, at *13. He also does not argue that the Government has treated him "differently than any of the other" petitioners who are facing similar circumstances. *Id.*

Palakuru's counterarguments are unpersuasive. He contends that the Government "permits and endorses so-called line jumping by giving priority to petitioners like [him] who ha[ve] an immediately available [visa] and who are investors in regional centers." Pl.'s Resp. at 21. This argument misses the point. Granting Palakuru relief here would advance his petition in

front of others similarly situated—with respect to the availability of visas and investment in a regional center—who filed their petitions earlier. *See supra* Part III.B.1.

Palakuru also argues that accepting the line-jumping argument would insulate unreasonable-delay claims from judicial review. Pl.'s Resp. at 21–22. But as the Government points out, the fourth factor is only one of six. *See* Def.'s Reply at 23. And although it "is a significant hurdle for [a] plaintiff to overcome" when it weighs in the Government's favor, *see Uranga*, 2020 WL 5763633, at *12, it is not insurmountable, *see, e.g.*, *In re Barr*, 930 F.2d at 75 (suggesting that judicial intervention may be warranted if a plaintiff were "singled . . . out for especially bad treatment").

### 3.

The remaining *TRAC* factors also do not convince the Court that Palakuru has stated a claim of unreasonable delay.

The third and fifth factors require the Court to consider "the interests prejudiced by delay," including how delays affect "human health and welfare." *TRAC*, 750 F.2d at 80. Palakuru alleges that his life "and the lives of his family members are on hold" and that the agency's overdue consideration of his petition "depriv[es] them of the ability to acquire visas." Compl. ¶ 100. While the Court does not doubt that Palakuru has an interest in prompt adjudication, so too do many others facing similar circumstances. This interest does not override the other factors favoring the Government—particularly the Government's competing priorities and the fact that granting relief to Palakuru "would simply move all others back one space." *Mashpee*, 336 F.3d at 1100 (cleaned up). At most, these factors would weigh only slightly in support of finding an unreasonable delay. They are not enough to overcome the other factors that weigh strongly in the Government's favor.

The sixth and final *TRAC* factor simply "notes that the Court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *Ghadami*, 2020 WL 1308376, at *9.  Palakuru's complaint alleges that the Government has engaged in "purposeful[] delay" and has "artificially inflate[d] Form I-526 processing times."[8]  Compl. ¶ 105.  But he does not press these arguments in support of the sixth factor in his opposition.  *See* Pl.'s Resp. at 22–23; Def.'s Reply at 22; *see also Iqbal*, 556 U.S. at 678 (requiring a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").  As *TRAC* directs, though, the lack of plausible allegations of impropriety does not weigh against Palakuru.  This factor is thus neutral and does not alter the Court's analysis.

*     *     *

In sum, the Court determines that Palakuru has not stated a claim for unreasonable delay. The Court accordingly denies Palakuru's request for attorneys' fees under the Equal Access to Justice Act.  *See* Compl. ¶¶ 109–12, 115; 28 U.S.C. § 2412 (providing that a "prevailing party" may receive fees and expenses).  If Palakuru's complaint can be construed as seeking a writ of mandamus, that request is denied.  *Cf. Ghadami*, 2020 WL 1308376, at *9 (construing complaint as raising a request for mandamus even though the "plaintiffs ha[d] not alleged a separate claim" because "they asked the Court to compel defendants to promptly complete all administrative processing within sixty days" (cleaned up)).  The Court would evaluate (and reject) a claim for mandamus under the same analysis as the unreasonable-delay claim.  *See id.*

---

[8]  To the extent that Palakuru argues that the Government's published processing times for EB-5 visas are "inaccurate" and "inconsistent," *see* Pl.'s Resp. at 19–20, the Court finds the argument irrelevant to the *TRAC* analysis.  Even if Palakuru is correct, the Court finds that the delay he has faced is not unreasonable when applying the *TRAC* factors to the allegations in his complaint.

## IV.

For these reasons, the Court will grant the Government's motion to dismiss.[9]  A separate

Order will issue.

Dated: February 22, 2021                                   _____
                                                            TREVOR N. McFADDEN, U.S.D.J.

---

[9]  The Government asks the Court to dismiss the complaint with prejudice.  *See* Def.'s Proposed
Order, ECF No. 9-2.  But "[a] dismissal *with prejudice* is warranted only when a trial court
determines that the allegation of other facts consistent with the challenged pleading could not
possibly cure the deficiency."  *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)
(cleaned up).  It remains possible that Palakuru can cure the deficiencies in his complaint down
the road.  For example, the delay in adjudication may continue beyond a reasonable amount of
time or he may be singled out for disfavored treatment.  It is thus too soon to forever foreclose
Palakuru's claims.